1
2
3
4
5
6 UNITED STATES DISTRICT COURT
7 EASTERN DISTRICT OF WASHINGTON
8

9 DAVID FOSTER CLARK, JR.,                   No. 1:14-CV-03154-JTR

10         Plaintiff,                        ORDER GRANTING, IN PART,
                                             PLAINTIFF'S MOTION FOR
11         v.                                SUMMARY JUDGMENT
12
13 CAROLYN W. COLVIN,
14 Commissioner of Social Security,
15         Defendant.
16

17      **BEFORE THE COURT** are cross-motions for summary judgment.  ECF

18 No. 16, 21.  Attorney Thomas Bothwell represents David Foster Clark, Jr.

19 (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the

20 Commissioner of Social Security (Defendant).  The parties have consented to

21 proceed before a magistrate judge.  ECF No. 6.  After reviewing the administrative

22 record and briefs filed by the parties, the Court **DENIES** Defendant's Motion for

23 Summary Judgment; **GRANTS, in part,** Plaintiff's Motion for Summary

24 Judgment, and **REMANDS** the matter to the Commissioner for additional

25 proceedings pursuant to 42 U.S.C. § 405(g).

26                              **JURISDICTION**

27      Plaintiff filed applications for Supplemental Security Income (SSI) and

28 Disability Insurance Benefits (DIB) on August 2, 2011, alleging disability

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 1

beginning May 1, 2009.  Tr. 11.  The applications were denied initially and upon reconsideration.  Tr. 142-148, 151-156.  Administrative Law Judge (ALJ) Wayne Araki held a hearing on August 5, 2013, at which Plaintiff, represented by counsel, testified as did vocational expert (VE) Scott Whitmer.  The ALJ issued an unfavorable decision on August 28, 2013.  Tr. 8-28.  The Appeals Council denied review.  Tr. 1-6.  The ALJ's August 2013 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on October 16, 2014.  ECF No. 1, 4.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was thirty nine years old at the time of the hearing.  Tr. 96.  Plaintiff graduated from high school and attended college for some time but did not receive a degree.  Tr. 46-47.  Plaintiff has worked as a fast food services manager, produce sorter, food server, housekeeping cleaner, and fast food worker.  Tr. 89.

Plaintiff testified that he cannot work due to a combination of stomach issues and anxiety.  Tr. 41.  Plaintiff takes Zoloft, lorazepam, and trazodone for his mental impairments, but testified that the medication makes it hard for him to focus and makes his stomach hurt.  Tr. 43-45.  Plaintiff also took Aderall to help him focus in school, but it did not help him.  Tr. 45-46.  Plaintiff testified that he takes antidepressants for his irritable bowel syndrome (IBS).  Tr. 55.  Plaintiff stated that he has had a medical marijuana card since 2009 or 2010 and he uses marijuana to help calm his stomach, eat, and sleep.  Tr. 56.

Plaintiff estimated that, in an eight hour workday, his stomach issues would likely make him unproductive for four or five hours a day.  Tr. 62.  Plaintiff testified that his anxiety makes it hard to focus and concentrate and makes him

forgetful.  Tr. 63.  Plaintiff also stated he experiences uncontrollable shaking in his hands, and sometimes his whole body, on account of his anxiety.  Tr. 316.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests upon claimants to establish a prima facie

case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On August 28, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

Preliminarily, for purposes of Plaintiff's DIB application, the ALJ found that Plaintiff met the insured status requirements through June 30, 2011.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since May 1, 2009, the alleged onset date. Tr. 13.

At step two, the ALJ determined Plaintiff had the following severe impairments: IBS and attention deficit hyperactivity disorder (ADHD). Tr. 13.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 16. The ALJ found Plaintiff had the following residual function capacity (RFC):

> lift or carry 50 pounds occasionally and 25 pounds frequently. He has no restrictions standing, walking and sitting. [Plaintiff] should not climb ladders, ropes or scaffolds. He can remember, understand and carry out instructions and tasks generally associated with occupations with a specific vocational preparation (SVP) level of 1 to 4. [Plaintiff] needs to work in a setting where he is no more than approximately 100 feet from a bathroom.

Tr. 17.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 4

At step four, the ALJ concluded that Plaintiff was able to perform his past relevant work as a sandwich maker, fast food worker, agricultural produce sorter, and agricultural produce packer. Tr. 23.

The ALJ did not reach step five as the ALJ found Plaintiff not disabled at step four. The ALJ thus concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from May 1, 2009, through the date of the ALJ's decision, August 28, 2013. Tr. 24.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards. Plaintiff contends the ALJ erred by (1) failing to find Plaintiff's mental impairments severe at step two, (2) failing to properly credit Plaintiff's testimony about the severity of his symptoms, (3) failing to accord adequate weight to the opinions of Plaintiff's treating and examining medical providers, and (4) failing to conduct an adequate step four analysis.

## DISCUSSION

### A.    Step Two

Plaintiff argues the ALJ erred in finding his depression, anxiety, and personality disorder did not each rise to the level of a severe impairment at step two of the sequential evaluation process. ECF No. 16 at 11, 19 n.1.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005). An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a). Basic work activities are "abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Smolen v. Chater*, 80 F.3d

1273, 1279 (9th Cir. 1996) (internal quotation marks omitted).  A claimant's own statement of symptoms alone will not suffice.  *See* 20 C.F.R. §§ 404.1508, 416.908.

### 1.   Anxiety

The ALJ found Plaintiff's anxiety not severe because Plaintiff seemed to exaggerate his anxiety symptoms (possibly for purposes of secondary gain), his treatment providers did not observe symptoms, and he reported that he was usually happy.  Tr. 15.

The ALJ erred in not finding Plaintiff's anxiety a severe impairment at step two.  As discussed in more detail *infra*, numerous acceptable medical sources diagnosed Plaintiff with an anxiety disorder.  *See* Tr. 399, 467, 683, 758.  Phillip Dove, M.D., diagnosed Plaintiff with anxiety and observed Plaintiff "project[s] all of the responsibility on to others, does not own the management, . . . speaks very highly of [himself] and poorly of others, [and] . . . is reluctant to [make] any changes."  Tr. 683.  In a mental medical source statement dated July 24, 2013, Minninder Sandu, M.D., also diagnosed Plaintiff with anxiety and stated that his anxiety "seems to interfere in [his] daily functioning."[1]  Tr. 757-758.  Dr. Sandu further found Plaintiff was irritable, had conflict with authority figures, had trouble getting along with others, and that his anxiety impaired his attention and concentration.  Tr. 757.

Based on the number of medical providers who diagnosed Plaintiff with anxiety, and the fact that certain providers assessed functional limitations associated with anxiety, the evidence establishes that Plaintiff's anxiety is more

---

[1]Dr. Sandu rendered this opinion prior to the date of the ALJ's decision, but Plaintiff did not submit this opinion until after the ALJ's decision.  The Appeals Council considered Dr. Sandu's mental medical source statement, Tr. 5, but did not find reason to review the ALJ's decision, Tr. 1.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 6

than "a slight abnormality" and "has . . . more than a minimal effect on . . . [Plaintiff's] ability to work." *Smolen*, 80 F.3d at 1279. The ALJ erred by not finding Plaintiff's anxiety a severe impairment. The reasons given by the ALJ to find Plaintiff's anxiety non-severe mostly had to do with Plaintiff's credibility and how the ALJ weighed the medical evidence. It does not appear the ALJ applied a "de minimis" standard in evaluating whether Plaintiff's anxiety was severe.

**2.    Personality Disorder**

The ALJ found Plaintiff's personality disorder not severe. The ALJ reasoned that Plaintiff had "a history of jobs that entailed working with the public," he typically interacted well with treatment providers, and he reported he regularly hung out with his friends. Tr. 14-15.

Dr. Schneider and Dr. Donaldson diagnosed Plaintiff with different types of personality disorders. *See* Tr. 399 (narcissistic and avoidant personality disorders), 510 (antisocial personality disorder). Dr. Schneider questioned whether Plaintiff would be able to function in the workplace given how he was "guarded and thin-skinned," had a "defiant attitude" towards authority figures, "sees himself as better than others," and "externalizes the blame for things onto most other people." Tr. 398-399. Dr. Donaldson observed similar behavior noting Plaintiff "externalized blame for his dysfunction to everyone else in his life." Tr. 510. Although the ALJ gave no weight to Dr. Schneider's opinions and partial weight to Dr. Donaldson's opinions, the Court concludes *infra* that the ALJ partially erred in evaluating these opinions.

Based on the diagnoses and limitations assessed by Drs. Schneider and Donaldson, the evidence establishes that Plaintiff's personality disorder is more than "a slight abnormality" and "has [] more than a minimal effect on . . . [Plaintiff's] ability to work." *Smolen*, 80 F.3d at 1279. The ALJ erred by not finding Plaintiff's personality disorder a severe impairment. Again, the ALJ's reasoning provides grounds to question the severity of Plaintiff's personality

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 7

disorder, but Plaintiff presented enough evidence of a personality disorder to meet his "de minimis" burden at step two.

### 3.   Depression

Unlike the medical evidence supporting Plaintiff's anxiety and personality disorder, there is little medical evidence supporting Plaintiff's alleged depression. Although Plaintiff reported at times that he felt depressed, no acceptable medical source diagnosed him with a depressive disorder.  A claimant's own statement of symptoms will not support finding an impairment severe at step two.  *See* 20 C.F.R. §§ 404.1508, 416.908.  The ALJ did not err in finding Plaintiff's depression not severe.

## B.   Credibility

Plaintiff contests the ALJ's adverse credibility determination in this case. ECF No. 16 at 16-18.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's self-report "not entirely reliable." Tr. 19.  The ALJ reasoned that Plaintiff was less than credible because his symptom reporting was contrary to the medical evidence, his activities of daily living (ADL), and his prescribed treatment.  The ALJ also reasoned that Plaintiff made inconsistent statements about unemployment benefits and ability to work and was possibly motivated by secondary gain. Tr. 16, 19-21.  Furthermore, the ALJ noted that

Catherine Donaldson, M.D., an examining physician, commented that Plaintiff was possibly malingering.  Tr. 15, 22 (citing Tr. 209).

### 1.    Contrary to the Objective Medical Evidence

The ALJ found that the medical evidence does not support Plaintiff's subjective complaints.  Tr. 20-21.

Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Regarding Plaintiff's IBS, the ALJ noted Plaintiff's "workup at Yakima Gastroenterology Associates was essentially negative."  Tr. 20.  The ALJ pointed out that a physician at that clinic did not feel comfortable filling out disability paperwork for Plaintiff based on his IBS.  Tr. 20 (citing Tr. 441).

Regarding Plaintiff's ADHD, the ALJ noted that Plaintiff's examining medical providers found Plaintiff's memory, concentration, and ability to maintain attention to be normal.  Tr. 20-21.  The ALJ further noted that Plaintiff's treatment records do not describe Plaintiff as hyperactive or unable to sit still.  Tr. 21.

The Court concluded *supra* that the ALJ erred by not finding Plaintiff's anxiety and personality disorder to be severe impairments.  The Court concludes *infra* that the ALJ erred in evaluating some of the medical evidence.  Given these errors, on remand the ALJ will need to reevaluate the medical evidence.  Whether the objective medical evidence provides a legitimate basis to discredit Plaintiff's subjective complaints will depend on the ALJ's conclusions after the ALJ takes into account Plaintiff's anxiety and personality disorder, further evaluates the evidence, and supplements the record.

///

///

///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 9

**2.    ADL**

The ALJ's second reason for finding Plaintiff less than credible, i.e. that Plaintiff's activities cast doubt on his alleged limitations, Tr. 21, is a specific, clear, and convincing reason to undermine Plaintiff's credibility.

"[D]aily activities may be grounds for an adverse credibility finding if a claimant is able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting." *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (internal quotation marks omitted).  A claimant need not be "utterly incapacitated," however, to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

The ALJ noted that Plaintiff reported being able to apply for work, do housework, prepare meals, take care of his child every other weekend, drive, shop, read, watch television, maintain an aquarium, and operate a part-time tie-dye business.  Tr. 21 (citing Tr. 282-285, 316-323, 640, 737, 744).

Because the ALJ did not find that Plaintiff was "able to spend a substantial part of his day engaged in pursuits involving performance of physical functions that are transferable to a work setting," *Orn*, 495 F.3d at 639, Plaintiff's activities alone would not provide a clear and convincing reason to find Plaintiff not credible.  Plaintiff's activities do, however, indicate that he can live independently and he is capable of a wide range of tasks.  The ALJ did not err in citing Plaintiff's activities as a reason to question the severity of his impairments, but this reason standing alone would not support an adverse credibility determination.

**3.    Impairments Treated with Medication**

The ALJ made some observations about Plaintiff's use of prescription medication, although it is unclear how the evidence cited by the ALJ serves to discredit Plaintiff.

///

///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 10

The fact that a claimant's impairments can be remedied by treatment or medication is a legitimate reason for discrediting the claimant's testimony. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ noted that Plaintiff was not taking "any medication specifically prescribed for his gastrointestinal complaints." Tr. 19. The ALJ also noted inconsistencies regarding whether Aderall alleviated Plaintiff's ADHD symptoms. Tr. 20.

How the ALJ intended to use his observations about Plaintiff's use (or lack of use) of prescription medication to discount Plaintiff's credibility is not entirely clear. It is not clear if the ALJ found that Plaintiff was prescribed medication for his gastrointestinal complaints and did not take the medication or if Plaintiff's providers never prescribed him any medication. Both reasons, if supported by substantial evidence, could potentially serve to discredit Plaintiff. But the ALJ's reasoning is not specific enough to be valid. Furthermore, there is some indication that Plaintiff was unable to afford the medication and treatment prescribed by Gonzalo M. Pandolfi, M.D., for Plaintiff's abdominal issues. *See* Tr. 378-379. A claimant's failure to follow a course of treatment may be excused if the claimant cannot afford the treatment. *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

Likewise, it is unclear how Plaintiff's inconsistent use and reaction to Aderall undermines his credibility. The ALJ fails to articulate whether Plaintiff did not take Aderall as it was prescribed to him or whether Plaintiff was simply inconsistent about reporting its effect. The fact that Plaintiff had varying reactions to Aderall is documented in the medical evidence as Plaintiff's medical providers adjusted his dosage trying to find a dosage that work well for him. *See*, *e.g.*, Tr. 388 (Dr. Schneider noting how Plaintiff worked with his treating sources to find the right dosage of Aderall); *see also* Tr. 395 (Plaintiff reporting he "is real sensitive to medications").

///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 11

On remand, the ALJ should clarify how Plaintiff's use (or lack of use) of prescription medication undermines Plaintiff's credibility.  The ALJ should also consider whether Plaintiff's noncompliance with his treatment or medication could be excused because he could not afford it.

### 4.    Failure to Comply with Treatment

The ALJ cited some instances where Plaintiff failed to comply with a prescribed course of treatment.  The ALJ noted Plaintiff "canceled a nutrition follow up appointment and declined to reschedule."  Tr. 19 (citing Tr. 628).  The ALJ noted that Dr. Dove recommended Plaintiff quit smoking, which might improve his IBS.  Tr. 20 (citing Tr. 683).  The ALJ noted that Plaintiff continued to smoke cigarettes.  Tr. 20.

The ALJ may rely on unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment to discount a claimant's credibility.  *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ did not err in reasoning that Plaintiff's failure to continue his nutrition appointments undermined his subjective complaints.  Plaintiff's treating providers often recommended that changing his diet might help his IBS.  *See* Tr. 365, 369, 377, 381.  Plaintiff's unwillingness to pursue such changes would tend to indicate that his impairments are not as serious as he alleges.

The fact that Plaintiff failed to quit smoking, however, is not a clear and convincing reason.  "Given the addictive nature of smoking, the failure to quit is as likely attributable to factors unrelated to the effect of smoking on a person's health."  *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000); *see also id.* (holding a claimant's failure to comply with a diagnosis to quit smoking "is an unreliable basis on which to rest a credibility determination").  Even though Plaintiff's smoking may have contributed to his IBS, the fact that he did not quit as recommended by Dr. Dove does not necessarily undermine Plaintiff's credibility.

///

1    **5.    Symptoms Improved**

2        The ALJ noted that, in a November 26, 2012 report, Plaintiff reported that

3    his IBS greatly improved.  Tr. 19 (citing Tr. 628).  "[S]ome improvement,"

4    however, "does not mean that [a claimant's] impairments no longer seriously affect

5    [the claimant's] ability to function in a workplace."  *Holohan v. Massanari*, 246

6    F.3d 1195, 1205 (9th Cir. 2001).  Plaintiff has sought medical treatment for his

7    gastrointestinal issues for over ten years.  Tr. 426.  He testified that the symptoms

8    are sometimes worse than others.  Tr. 59-61.  Given his history of complaints and

9    treatment, an isolated report where he reports improvement does not necessarily

10   mean that his "impairments no longer seriously affect [his] ability to function in a

11   workplace."  *Holohan*, 246 F.3d at 1205.  Furthermore, a single report of

12   improvement is consistent with Plaintiff's reports that his symptoms are sometimes

13   worse than other times.

14   **6.    Inconsistent Statements**

15       The ALJ noted at least three inconsistencies in Plaintiff's testimony and self-

16   reports that suggested he was not entirely credible.  First, the ALJ noted that

17   Plaintiff received unemployment benefits during the same period he is alleging

18   disability.  Tr. 19, 75.  Plaintiff testified he was able work during the period he was

19   receiving unemployment benefits.  Tr. 19, 78-79.  The ALJ noted the inconsistency

20   between how Plaintiff presented himself for receiving unemployment benefits and

21   for his disability applications.  Tr. 19.  Second, the ALJ noted Plaintiff's

22   inconsistent reporting regarding his abilities to lift, bend, and walk.  Tr. 20

23   (*comparing* Plaintiff's September 2011 function report, Tr. 286, *with* Plaintiff's

24   March 2012 function report, Tr. 321).  Third, the ALJ noted Plaintiff gave

25   inconsistent reasons for leaving the Air Force.  Tr. 21.

26       In determining a claimant's credibility, the ALJ may consider "ordinary

27   techniques of credibility evaluation, such as the claimant's reputation for lying,

28   ///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 13

prior inconsistent statements . . . and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284.

The three inconsistencies cited by the ALJ are clear and convincing reasons to question Plaintiff's credibility.

### 7.    Secondary Gain

The ALJ noted Plaintiff "is receiving [Veterans' Administration (VA)] disability benefits for [IBS] and therefore has little incentive to report that his condition is anything other than disabling." Tr. 19.  The ALJ pointed to an instance where Plaintiff reported not working because he had been told working might affect his SSI claim.  Tr. 21 (citing Tr. 589).  In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation." *Smolen*, 80 F.3d at 1284.  Based on Plaintiff's reports of receiving VA benefits and not working because he did not want to jeopardize his SSI claim, the ALJ reasonably inferred that Plaintiff may be motivated by secondary gain.  This is a clear and convincing reason to question Plaintiff's credibility.

### 8.    Malingering

Catherine Donaldson, Ph.D., conducted a psychological evaluation of Plaintiff in March 2012 as part of Plaintiff's treatment through the VA.  Tr. 505-511.  Dr. Donaldson commented that Plaintiff appeared to exaggerate his symptoms for purposes of secondary gain or possibly malingering.  Tr. 22 (citing Tr. 509).  In assessing a claimant's credibility, the ALJ may consider a claimant's failure "to give maximum or consistent effort during . . . evaluations." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  The ALJ did not rely on Dr. Donaldson's malingering diagnosis to summarily discredit Plaintiff.  Together with other valid reasons, the fact that Dr. Donaldson questioned Plaintiff's motivations would tend to support the ALJ's adverse credibility determination.

///

///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 14

**9.    Conclusion**

The ALJ provided many reasons for finding Plaintiff not entirely credible. Some of the reasons are valid, some are not supported by substantial evidence or based on legal error.  Given that the Court finds remand necessary for the ALJ to address errors made at step two and in evaluating the medical evidence, the ALJ should also re-evaluate Plaintiff's credibility consistent with this opinion and consistent with the ALJ's reconsideration of the evidence.

**C.    Evaluation of Medical Evidence**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinions of Drs. Schneider, Moon, Pandolfi and nurse practitioner Ms. Porter. ECF No. 16 at 11-15.

"In making a determination of disability, the ALJ must develop the record and interpret the medical evidence." *Howard ex. rel. Wolff v. Barhart*, 341 F.3d 1006, 1012 (9th Cir. 2003).

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830.  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn*, 495 F.3d at 631.  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons.  *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  When a physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician.  *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 15

1        **1.      Paul Schneider, Ph.D.**

2        Plaintiff presented to Dr. Schneider for a psychological evaluation on April

3  11, 2008, to determine his eligibility for State benefits.  Tr. 391.  Dr. Schneider

4  diagnosed Plaintiff with several mental impairments including ADHD,

5  predominantly hyperactive-impulsive; anxiety disorder, NOS; narcissistic

6  personality disorder; and, avoidant personality disorder.  Tr. 399.  Dr. Schneider

7  noted that Plaintiff's test scores raised the question of whether Plaintiff was

8  making a cry for help or exaggerating his symptoms.  Tr. 398.  Dr. Schneider noted

9  that Plaintiff's behavior issues would be problematic in a work environment and

10  recommended Plaintiff engage in cognitive behavioral therapy.  Tr. 399.  Plaintiff

11  apparently continued to have "sessions" with Dr. Schneider (possibly for

12  vocational counseling and medication management) through August 2010.  Tr.

13  388.

14        The ALJ gave no weight to Dr. Schneider's opinion.  Tr. 21.  The ALJ

15  reasoned that Dr. Schneider "rendered [his opinions] in April 2008[,] more than a

16  year before the alleged onset date."  Tr. 21.

17        The Court finds that the ALJ erred by rejecting Dr. Schneider's opinions for

18  the sole reason that his initial evaluation predates Plaintiff's alleged onset date.

19  Generally, "[m]edical opinions that predate the alleged onset of disability are of

20  limited relevance."  *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165

21  (9th Cir. 2008).  Dr. Schneider completed his initial evaluation before Plaintiff's

22  alleged onset date, which would usually make it less relevant.  But the fact that Dr.

23  Schneider continued to see Plaintiff into August 2010 for the conditions he

24  diagnosed earlier would suggest that the earlier diagnoses continued to affect

25  Plaintiff into the relevant period.  This is a unique situation where it seems

26  improper to summarily discredit Dr. Schneider's opinions based on the date of the

27  initial evaluation.  The ALJ erred by rejecting Dr. Schneider's thorough evaluation

28  when he continued to see Plaintiff in the relevant period.

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 16

1    On remand, the ALJ should give greater weight to Dr. Schneider's opinions

2    or give additional specific and legitimate reasons for rejecting them.  The ALJ

3    might also need to supplement the record to determine the scope and purpose of

4    the "sessions" between Plaintiff and Dr. Schneider.  *See Smolen*, 80 F.3d at 1288

5    ("In Social Security cases the ALJ has a special duty to fully and fairly develop the

6    record and to assure that the claimant's interests are considered.").

7            **2.      Tae-Im Moon, Ph.D.**

8            Plaintiff presented to Dr. Moon for a psychological/psychiatric evaluation on

9    March 22, 2012.  Tr. 467-470.  Dr. Moon diagnosed Plaintiff with anxiety disorder,

10   NOS, and ADHD, NOS.  Tr. 467.  Dr. Moon estimated that Plaintiff would likely

11   be impaired for six to twelve months "with consistent mental health care," Tr. 468,

12   and recommended psychotropic medication, Tr. 469.

13           The ALJ gave little weight to Dr. Moon's opinions.  Tr. 21.  The ALJ

14   reasoned that Dr. Moon's opinions were vague and based on Plaintiff's unreliable

15   self-reporting, including Plaintiff's inconsistent reporting of his marijuana use.  Tr.

16   21-22.

17           The ALJ did not err in giving little weight to Dr. Moon's opinions.  The

18   Court agrees that Dr. Moon's opinions are vague; particularly because Dr. Moon

19   provides little information about limitations that would result from Plaintiff's

20   impairments.  In describing the effect Plaintiff's symptoms had on his ability to

21   work, Dr. Moon basically regurgitates Plaintiff's subjective complaints.  Tr. 468.

22   The only limitation assessed by Dr. Moon was that Plaintiff's short term recall

23   might "interfere with his ability to remember complex instructions."  Tr. 468.  The

24   ALJ's other reasons for discounting Dr. Moon's opinions are also specific and

25   legitimate reasons.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008)

26   (medical opinion may be discounted if it relies on a claimant's unreliable self-

27   report); *Morgan*, 169 F.3d at 602-603 (ALJ need not accept a medical opinion that

28   ///

fails to take into account a claimant's drug or alcohol use).  The ALJ did not err in giving little weight to Dr. Moon's opinions.

### 3.    Catherine Donaldson, Ph.D.

Dr. Donaldson performed a psychological evaluation on March 21, 2012, as part of Plaintiff's treatment through the VA.  Tr. 505-511.  Dr. Donaldson diagnosed Plaintiff with marijuana intoxication/dependence; mood disorder, NOS; antisocial personality disorder, psychopathic; and borderline traits.  Tr. 510.

The ALJ assigned some weight to Dr. Donaldson's opinion that Plaintiff might be exaggerating his symptoms or possibly malingering.  Tr. 22.  The ALJ did not otherwise discuss Dr. Donaldson's opinions and observations.

The ALJ erred in giving weight only to Dr. Donaldson's comment about Plaintiff's possible exaggerating or malingering without giving reasons for rejecting Dr. Donaldson's other opinions.  Dr. Donaldson diagnosed Plaintiff with having an antisocial personality disorder and observed that, as a manifestation of this disorder, Plaintiff "externalized blame for his dysfunction to everyone else in his life." Tr. 510.  As discussed *supra* and *infra*, this diagnosis is consistent with Dr. Schneider's diagnoses and the observations of Plaintiff's medical providers, including Ms. Porter.  The ALJ should not have simply given weight to the portions of Dr. Donaldson's opinion that support his finding of non-disability.

On remand, the ALJ should credit or give additional specific and legitimate reasons for discounting Dr. Donaldson's opinions.  The Court notes there are potentially several reasons to give Dr. Donaldson's opinions little weight (e.g., Plaintiff cut the evaluation short and apparently never scheduled an appointment to complete the evaluation, Dr. Donaldson suspected that Plaintiff was intoxicated at the time of the evaluation), but the Court cannot uphold the ALJ's decision based on "grounds upon which [the ALJ] did not rely." *Orn*, 495 F.3d at 630.

///

///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 18

1    **4.    Gonzalo Pandolfi, M.D.**

2        Plaintiff saw Dr. Pandolfi at Yakima Gastroenterology Associates

3    approximately five times between June 16, 2009, and March 29, 2011.  Tr. 376-

4    383.  Dr. Pandolfi treated Plaintiff for abdominal pain.  Dr. Pandolfi performed two

5    colonoscopies and one upper endoscopy.  Tr. 381-383.  On June 1, 2011, Dr.

6    Pandolfi wrote a note (possibly in support of Plaintiff's application for State

7    benefits) in which he opined that Plaintiff's stomach issues "could have an effect

8    on [Plaintiff's] ability to sit for long periods of time."  Tr. 385.

9        The ALJ gave no weight to Dr. Pandolfi's note dated June 1, 2011.  Tr. 22.

10    The ALJ reasoned Dr. Pandolfi's note was unsigned; the opinions were vague and

11    unsupported by the record; and Dr. Pandolfi did not address the extent to which the

12    diagnosed impairments would affect Plaintiff's ability to sit.  Tr. 22.  The ALJ also

13    found Dr. Pandolfi's opinion inconsistent with Plaintiff's March 2012 function

14    report in which he indicates no problem sitting.  Tr. 22, 321.  The ALJ did not

15    otherwise discuss Dr. Pandolfi's opinions except when the ALJ noted Plaintiff's

16    "workup at Yakima Gastroenterology Associates was essentially negative."  Tr. 20.

17        The ALJ did not err in giving no weight to Dr. Pandolfi's note dated June 1,

18    2011.  As noted by the ALJ, the opinion is not supported by the record and does

19    not provide specific limitations or a basis for the opinions.  *See Thomas*, 278 F.3d

20    at 957 (ALJ may reject a medical opinion that is "inadequately supported by

21    clinical findings"); *Batson*, 359 F.3d at 1195 (ALJ may reject opinions that are

22    "brief" or "conclusory").  As noted by the ALJ, Plaintiff's own self-reporting

23    contradicts Dr. Pandolfi's opinion, which is a strong indication that Dr. Pandolfi's

24    opinion is not entirely reliable.  The ALJ gave specific and legitimate reasons for

25    giving little weight to Dr. Pandolfi's opinions.

26    **5.    Minninder Sandhu, M.D.**

27        Dr. Sandu completed a mental medical source statement on July 24, 2013.

28    Tr. 755-758.  Although the statement was signed prior to the date of the hearing,

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 19

1  Dr. Sandu's statement was not part of the record before the ALJ.  Plaintiff

2  submitted this evidence directly to the Appeals Council, which the Appeals

3  Council considered and made part of the administrative record.  Tr. 5.  The Court

4  must consider evidence submitted to the Appeals Council that the Appeals Council

5  reviewed in deciding whether to review the ALJ's decision.  *Brewes v. Comm'r of*

6  *Soc. Sec. Admin.*, 682 F.3d 1157, 1163 (9th Cir. 2012).

7       Dr. Sandu opined that Plaintiff "meets the criteria for Generalized Anxiety

8  Disorder."  Tr. 758.  Dr. Sandu commented that Plaintiff's "significant anxiety

9  [and] chronic pain" would likely "interfere with his daily functioning."  Tr. 757.

10  Dr. Sandu opined that Plaintiff's anxiety would affect his ability to interact with

11  authority figures and other people.  Tr. 757.  In a check box form, Dr. Sandu

12  indicated Plaintiff's anxiety would cause several moderate and marked limitations

13  in different areas of functioning.  Tr. 756.  Dr. Sandu referred to evaluations he

14  performed on May 8, 2013, and June 12, 2013, for more details supporting his

15  opinions.  Tr. 758.

16       The Court finds Dr. Sandu's opinions concerning Plaintiff's anxiety mostly

17  consistent with the opinions of Plaintiff's other treating and examining sources,

18  including Drs. Schneider and Dove.  It is entirely unclear, however, how Dr. Sandu

19  reached his conclusions or his relationship with Plaintiff.  The earlier evaluations

20  that Dr. Sandu refers to in his mental medical source statement might shed some

21  light on these areas.  On remand, the ALJ should consider Dr. Sandu's statements.

22  The ALJ should also supplement the record—through interrogatories, subpoena of

23  the evaluations referred to in Dr. Sandu's mental medical source statement, or

24  otherwise—to determine the basis of Dr. Sandu's opinions.

25  **6.    Sarah Porter, ARNP**

26       Generally, the ALJ should give more weight to the opinion of an acceptable

27  medial source than to the opinion of an "other source," such as a nurse practitioner.

28  20 C.F.R. §§ 404.1513(d), 416.913(d).  An ALJ is required, however, to consider

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 20

evidence from "other sources," 20 C.F.R. §§ 404.1513(d), 416.913(d); S.S.R. 06-03p, "as to how an impairment affects a claimant's ability to work," *Sprague*, 812 F.2d at 1232.  An ALJ must give "germane" reasons to discount evidence from "other sources."  *Dodrill v. Shalala*, 12 F.3d 915 (9th Cir. 1993).  Germane reasons to discount an opinion include contradictory opinions and lack of support in the record.  *Thomas*, 278 F.3d at 957.

Ms. Porter treated Plaintiff for his abdominal issues and anxiety at Yakima Neighborhood Health Services (between December 2011 and June 2012).  Tr. 409-413, 421-424, 684-687, 692-695.  On August 25, 2011, Ms. Porter completed a form as part of Plaintiff's application for State benefits.  Tr. 463-464.  Ms. Porter opined that Plaintiff's work function was impaired by his physical impairments, which she estimated would last six months.  Tr. 463.  Ms. Porter completed an identical form on January 19, 2012, in which she noted that Plaintiff could stand for six hours in an eight hour workday, could sit for prolonged periods, could lift a maximum of fifty pounds, and could frequently lift twenty five pounds.  Tr. 465.

The ALJ gave no weight to Ms. Porter's opinions contained in the August 2011 DSHS form.  Tr. 22.  The ALJ reasoned that Ms. Porter is not an acceptable medical source, she opined that Plaintiff's limitations would last for a six month period, and her opinions were not supported by objective signs or findings or any other rationale.  Tr. 22.  The ALJ gave more weight to Ms. Porter's opinions contained in the January 2012 DSHS form.  Tr. 22.  But again, the ALJ noted that Ms. Porter "did not cite any objective signs or findings or provide any rationale in support of the opinion."  Tr. 22.

Simply because Ms. Porter is not an acceptable medical source is not a germane reason to discount her assessments of Plaintiff's limitations.  *See Sprague*, 812 F.2d at 1232 (an ALJ is required to consider evidence from "other sources," "as to how an impairment affects a claimant's ability to work.")  But the ALJ's reasoning that Ms. Porter's opinions are not supported by objective evidence and

1   that she estimated Plaintiff's impairments would last only six months are germane

2   reasons for giving the opinions little weight. *See Thomas*, 278 F.3d at 957 (ALJ

3   may reject a medical opinion that is "inadequately supported by clinical findings");

4   42 U.S.C. § 1382c(a)(3)(A) (disability must be premised on medically

5   determinable physical or mental impairments that have "lasted or can be expected

6   to last for a continuous period of not less than twelve months").

7   **D.    RFC and Hypothetical Questions**

8         Plaintiff argues that the ALJ's step four finding is flawed because the ALJ's

9   hypothetical question to the VE was incomplete.  ECF No. 16 at 18-20.  Plaintiff

10  argues that the ALJ's hypothetical question should have taken into account

11  Plaintiff's need to take frequent bathroom breaks; miss several days of work a

12  month due to anxiety; issues associated with coworkers; paying attention; and

13  ADHD.  ECF No. 16 at 18-20.

14        Given the ALJ's errors at step two and in evaluating the medical evidence,

15  the Court will remand this case so the ALJ can re-evaluate Plaintiff's impairments

16  and RFC consistent with this opinion.  If warranted, the ALJ may also elicit the

17  testimony of a medical expert to assist the ALJ in formulating a new RFC

18  determination.

19                              **REMEDY**

20        The decision whether to remand for further proceedings or reverse and

21  award benefits is within the discretion of the district court.  *McAlliser v. Sullivan*,

22  888 F.2d 599, 603 (9th Cir. 1989).  An immediate award of benefits is appropriate

23  where "no useful purpose would be served by further administrative proceedings,

24  or where the record has been thoroughly developed," *Varney v. Secretary of Health*

25  *& Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused

26  by remand would be "unduly burdensome," *Terry v. Sullivan*, 903 F.2d 1273, 1280

27  (9th Cir. 1990).  *See Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014)

28  (noting that a district court may abuse its discretion not to remand for benefits

when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-596 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-1180 (9th Cir. 2000).

In this case, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to evaluate the medical evidence consistent with this opinion. The ALJ may also need to supplement the record, reevaluate Plaintiff's credibility, and, if necessary, determine the disability onset date. The ALJ shall obtain supplemental testimony from a VE and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is not entirely supported by substantial evidence and contains legal error.   Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 16**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.    Application for attorney fees may be filed by separate motion.

///
///
///
///

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 23

1       The District Court Executive is directed to file this Order and provide a copy

2   to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff**

3   and the file shall be **CLOSED**.

4       DATED July 6, 2015.



                                  _____

                                    JOHN T. RODGERS
                      UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING IN PART PLAINTIFF'S MOTION . . . - 24